Good morning. I'm here from Pittsburgh. I represent Mr. Adams, the inventor of the Rosary, which is the subject of the patent application that is the subject of this appeal. The appeal raises two issues for this Court to decide, the first one being whether the Board erred in determining that the claims were unpatentable under Section 103, and the second issue concerns claim construction of the phrase arm extending from the bead, which is in Claim 9. Rosaries have been around for a long time, actually for centuries, and as I'm sure we're all aware, a rosary is a string of beads which is flexible. One puts it in their pocket or purse, it becomes entangled, and to use it again one must untangle it. So the problem that Mr. Adams is trying to solve was to create a rosary device that would fit in the purse or pocket, but yet not get tangled on itself. Now this problem is one that's been addressed in the art for some time. In fact, the patent exam recited two references which disclose rosary devices that don't tangle on themselves. The first one being the ring of Kissinger, and the second one the device of Holscher. If one looks at that art as a whole, which we think the Board did not do and where they went astray, we see that when the artist tried to solve the problem, they've gone from a rosary which contains five decades or five groups of ten beads to a ring that has ten beads or eleven in the case of Holscher. So when the Board comes and says it would have been obvious to just make a ring with five groups of ten beads or stops, that's not what the art did. That's not the teaching of the art. Well, I mean, it's not in the teaching of any one of the three individual patents that was relied on as prior art, but it's the combination of those that gets you to where you are today, right? Well, that's the art that's before us. So why combining those references do you not get to an obvious position in your application? Well, the references really show three things. One is the string of rosary beads which have five groups of ten beads. So that's one aspect of your invention. Well, we're claiming a ring that is a defined path. It doesn't. It's not flexible. So then we go to Holscher or Kisslinger, which is actually a ring that has an open center and that has five beads, or I'm sorry, ten beads, one group of beads. So the examiner says, well, one could just modify. Take the two in combination? Take the two in combination. And what is wrong with that? Well, that's exactly what Kisslinger did. He took a ring and the beads and he came up with one group of ten stops. Now, he didn't come up with five groups of ten stops on there. And why? Well, he's talking about being able to feel the beads, to use the feel in saying the prayer. And if you do that with 50 stops in a ring, you can't feel them. You can't distinguish one from the other. So what the applicant did was make a ring that had a bead on it, so you've got the feel of a bead with these stops that it reaches. So you combine the feel of the bead in a ring, which doesn't tangle on itself and moves along. Is that the marker issue? They call it a marker in the prior art? Well, Holscher, I'm sorry, Belfield discloses a marker that moves along the beads. And there's no marker in the ring of Kisslinger. No, I understand that, but the board didn't find anticipation for any particular reference. It relied on an obviousness rejection, which would require combining those three patterns. That's right. Including the marker, including the ring or bracelet, and including the division of five and ten or whatever. And I guess I'm having a hard time understanding. I agree with you that any particular reference itself would not have by itself created either an obviousness or anticipation rejection. But what's the problem with combining them to get the board to where it got? Because when you combine them, you don't get to a ring with five groups of ten stops or five groups of ten beads. That's exactly what Kisslinger did. All of the references come up with ten stops or Holscher, which had eleven. The larger bead. So, the board just has ignored what the art has done. They haven't gone to this position. And that's where we say the error occurred. Was there any issue in the prosecution concerning the breadth of the claims? Because even on your argument, it does look conceivable that the way this design is being claimed does extend beyond the specifics of what's been presented to distinguish it from the art. Was that an issue at all? Well, I'm not sure where you mean it's beyond. I'm not sure I understand your question. I'm trying to understand the basis of the board's rejection. And it looks as if it's possible that their concern was not simply distinguishing from the prior art, but that the claims, whether or not your particular design is different, it looks plainly to be different. But you sought a utility patent, not a design patent. And therefore, of much greater breadth than the specific design that you've illustrated. I was wondering if those were issues at this stage, or if they would be issues even if we agreed with you on the points that you've appealed. Well, the claim is very specific. It talks about a closed path with five groups of ten stops. But five groups of ten stops is in the art. It's in the rosary. Certainly that's Belfield. But Belfield's not a ring with a defined path. But that aspect of the invention is found in another disclosure. Well, if you look at Kisslinger and Holsinger, they don't have the marker. And in fact, we had argued that Kisslinger would not put a marker. He's got a ring with gems on it. And anyone who's making a ring with gems on it is not going to have something travel over the top of it. We further said that if you're making a ring or a bracelet, which you're going to wear, you're not going to have a structure moving around the ring because it would be uncomfortable, basically. But use of a marker is in the art. It's in the art in the standard rosary. That's Belfield. That's right. That is correct. It is in Belfield. But Belfield doesn't have a fixed shape. Belfield's the standard rosary. In fact, Holsinger was actually cited for the point that it described the standard rosary as well in the beginning of it. So, he's going from the standard rosary, which has the dangling problem, to a ring or circular structure which has ten beads or eleven in the context of Holsinger's device. And in both of them, they're talking about being able to feel the beads as they say the prayers. And that's why the art hasn't gone in the direction that the applicant has, to maintain the feeling of the bead while moving around a path that doesn't hang by itself. I may move to the second issue, which is the issue of plank construction and the phrase arm extending from the bead. With respect to that issue, the board construed from to cover the marker device of Belfield, in which he's got a circular structure with webs extending into toward the center of the device. And from that is being construed as into. That is contrary to the plain meaning of from. It's contrary to the teaching of the application. Doesn't movement, both movement inward and outward from the surface of the bead, fairly constitute moving away from the bead? No. Why not? Because you're within the bead, not away from. The bead is itself a structure. But you're moving inward or you're moving outward? Why is that moving away from? Why isn't that sufficient? Because when the art describes the web structure, and in fact the applicant has a similar structure in the detail, it always speaks of inward, extending inwardly. The present application says a projection 8 extends into the central board. Belfield says webs 18, 19, 20, 21 extend radially toward the center. Toward is the opposite of from. When I said I was from Pittsburgh, you understood I was not within Pittsburgh or in Pittsburgh. I moved away from. But this is a painting application. Why not simply amend the claim to make clear what's intended by from? Well, we don't think that is necessary. Somebody could go back and do that. But from means moving away, not movement into. And we think that that was a mistake that the board made. When it said from means into. From does not mean into. From means away. And for that reason, the board erred in construing that term. Or the board did, rather. So we would ask this court to reverse the decision that the invention is not patentable under Section 103 because the board ignored the teaching of the art as a whole and to correct the claims instruction to indicate that from means away, not into. Okay. Thank you. We'll see if he has a little time, Mr. Allstate. Mr. Piccolo. May it please the court. Claim 1 recites a ring with five groups of stops and a marker that goes around the ring. And all those features are found in the prior art. Belfield discloses a rosary with a marker. And Kisslinger discloses rings and bracelets that have rosary stops for praying the rosary. And also discloses that these devices are ornamental in nature. And the board picked up on that, that because the bracelet or ring was ornamental and by its definition would not tangle upon itself, a person skilled in this mechanical field would readily combine the five groups of stops in Belfield with a marker on a bracelet of Kisslinger. That all of that was within ordinary skill and was not a patentable advance or the product of innovation to render Claim 1, again, which just recites, is directed to a ring, five groups of stops, and a marker that goes around the ring. Well, I think the other side's argument, as I understand it, is kind of the absence of motivation to do this, that the ring was a distinct invention and no one would have thought that it was inventive to consider, or to think about using the ring in the context of the other, you know, the marker and the other things in the prior art. Your Honor, right in Kisslinger, that reference states in Column 1, around line 14, in Column 2, line 77, that it is available as a rosary, that the ring or bracelet described in Kisslinger is ornamental, which would attract skilled artisans to use it, and it expressly says, is available as a rosary. So with the skill and the art of that there were five groups of stops with a marker in Belfield, it would be only ordinary skill to change Belfield's chain with five groups of stops and a marker to use the ring or bracelet of Kisslinger, which again, Kisslinger says, so there's an express teaching here that says, it is available as a rosary, and the Board, you know, made findings about motivation as to, or that a person would readily appreciate on pages 10 to 12 of the record, that the ornamental nature of the bracelet and ring as a rosary in Kisslinger and its lack of tangling would make someone combine these readily available teachings of five groups of stops with a marker on a bracelet. So you're really only putting together, and it's the mere use of ordinary skill, to use the bracelet for the stops and marker, the bracelet of Kisslinger, so it's right in Kisslinger. Isn't it a little odd in this case that you've got the references, some of which are nearly a decade old, and that it took so long to come up with this particular combination of the references? Should that, we'd be swayed in any way by that? I mean, we've got one of the references in 1922 and the other in the 1950s? No, Your Honor. As prior art, they still render claim one, and I think what was touched on during the appellant's opening is he may be able to amend his claims to get around some of this broad combination of bracelet, marker, and rosary, but as the claim is, these teachings and these old references still apply from an obviousness standpoint, and again, maybe it's not in the record that they're all in one reference. So we're not here today for reviewing the Board's anticipation finding, but in terms of what ordinary skill would have revealed from these old references, the bracelet available as a rosary, the five groups of stops in Holsher and Belfield with a marker, just combining those three things would have been within the level of skill of a skilled artisan in this mechanical field. What is the level of skill? Was there a finding of a level of skill in the art? That reading the references, it would have been a skilled artisan who makes rosaries and jewelry and bracelets in this mechanical field, and this Court has said that in mechanical fields, teachings and prior art references are more readily combinable. As to claim nine, again, the applicant did not amend claim nine for it to recite exactly what he was claiming, something going outwardly from the hollow marker. The marker has an inside and an outside, and he could have put what chose not to during prosecution, and if he files a continuation application before any mandate were to issue by this Court, he could, again, choose to amend his claim language extending from the need. Well, his reading is the most natural reading, is it not? I assume the Board is just resting on the notion that they have to take the broadest possible reading in their evaluation. On both notions, they're resting, Your Honor, that in applying the broadest reasonable construction which this Court has mandated, extending from, since you have a hollow cylindrical object, you can extend from the object and go away from it, as a matter of fact, by going from the object's inner circumference to the inside, or, as applicant says claim nine is about, but it's not in the claim, going outwardly from the outer circumference of the ring, which is kind of like a donut or a fence around a yard. If you're going to put a flagpole on a fence, you can extend it from the fence going inwardly or going outwardly. So because his marker, and it's in claim one, that it is positioned on the ring to travel around, it therefore has a hollow opening in the middle. And so you can go from the inner circumference inwardly, or from the outer circumference outwardly, and applicant has chosen to leave the claim that broad. Again, he could amend it and make it precisely what he wants. And so the Board's reasoning, not only in applying the broadest reasonable construction, was following this court's law, but also in terms of getting away from the marker and not going like boring into it, it is going away from. So that's all the Board was saying was your object, which has a hollow center, leaves open that extending from could mean going inwardly or outwardly. So basically the Board was saying you should amend your claim because we see it as, in the claim, broad. And it reads on Belfield, which has the extenders going inwardly. If the Court has no further questions, I'll take my seat. Any questions? Thank you, Mr. Piccolo. Mr. Olsten. I'd like to just address a few points that came up during the appellee's argument. First, with respect to the comment that Kisslinger teaches that his ring may be used as jewelry or a rosary, sure. I mean, it's got a series of ten stops, and you can go around it five times, and that's all he was talking about. We were, though, getting to the point of motivation. Your Honor was correct in saying these are all references, and if you look at what happened in the art, it never went in this direction. So we contend that the Board, by not looking at the art as a whole, there was no finding in the record of level of skill in the art. And finally, I wanted to address this point of broadest possible construction, which we see coming from the office all the time. And what they do is they do a word search, read the claims, do a word search, and not read the specification in some instances. And then they say, well, the broadest reasonable construction is anything it could mean in any context. And that simply is not right. One has to look at words from a claim in the context of the teaching of the specification and how it's used in the art. And we say that in this instance, even under the broadest possible construction theory that the office likes to throw out, it's wrong. It's not the broadest possible construction because broadest reasonable construction, not broadest possible construction, but broadest reasonable construction, has to look at the words in the context of the art and the claim, and that's not what the Board or the examiner did here. If no further questions, I thank you for your attention. Thank you, Mr. Hallstatt and Mr. Piccolo. The case is taken under submission. That concludes the argued cases for this morning. All rise. The Honorable Court is adjourned until tomorrow morning at 2 o'clock a.m. Nice to meet you. Thank you.